## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RANDY BLAKE PATTERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-1204-HE |
| | ) |
| NATIONAL BOARD OF MEDICAL EXAMINERS, | ) |
| | ) |
| Defendant. | ) |

**EXPERT REPORT OF**
**CATHERINE MARIE WITTGEN, M.D., F.A.C.S.**

*/s/ Catherine Marie Wittgen*
CATHERINE MARIE WITTGEN, M.D., FACS

**EXHIBIT 17**

## I.   NAME, QUALIFICATIONS, PUBLICATIONS AND LIST OF CASES

My name is Catherine Marie Wittgen, M.D., F.A.C.S. I am a tenured Professor of Surgery and Anesthesiology, Director for Surgical Critical Care, Program Director for General Surgery and Surgical Critical Care and current President of Staff at St. Louis University. I was an Associate Program Director for 12 years and am in my 3rd year as Program Director. I completed my General Surgery training at Saint Louis University, my Critical Care Fellowship at the University of Minnesota and my Peripheral Vascular Surgery fellowship at the Massachusetts General Hospital of Harvard University. I am board certified in General Surgery, Surgical Critical Care and Peripheral Vascular Surgery.

I am responsible for the selection and training of medical students, residents and fellows at St. Louis University. For the past 20 years, I have mentored, advised and guided medical students through the residency application process, including but not limited to students interested in the field of surgery. I advise and assist medical students in best positioning themselves to obtain residencies at other institutions, and I am active in the selecting residents at St. Louis University. The process involves a realistic assessment of the medical student candidate and an accurate evaluation of the caliber of other medical centers of interest so that a medical student may successfully match to an acceptable program. For the last 20 years, each of the candidates I have advised has matched into a program on their rank list. In addition, I review over 900 applications for the surgery residency each year and over 200 applications for preliminary positions. The Department of Surgery at St. Louis University interviews approximately 120 candidates each year for 5 categorical and 5 preliminary positions. I conduct and oversee the interview process and work with the surgery application committee to compose a rank list each year. In addition, I am responsible for the review by the Department of Surgery at St. Louis University of any unmatched candidates in the scramble process for unmatched residents and positions each year.

I am an active member of the John Cochran Veterans Administration Hospital and St. Louis University medical staff. In addition to providing direct patient care, I share responsibility for vascular laboratory interpretation with another clinician at the VA. My training of general surgery residents, critical care fellows and peripheral vascular fellows includes managing patients with post-operative complications, hemodynamic instability, multisystem organ failure and complex vascular issues requiring both open and endovascular interventions. I provide ICU care for trauma/general surgery patients and sees patients with chronic wounds, venous insufficiency and lymphedema in my outpatient clinic.

I have participated in over 39 clinical trials with residents/fellows as sub-investigators. I have also served on international research oversight committees and am currently a member of the national endpoint adjudication committee for Bayer. I have chaired a committee for SESAP for the American College of Surgeons for 15 years. I continue to participate in national committees for Board Certification through the American Board of Surgery. I have given over 200 invited presentations nationwide. My curriculum vitae is attached hereto as **Exhibit A**.

I have testified in other cases as an expert witness at trial, at oral deposition and/or in the form of prepared written testimony as set forth in **Appendix B**. I am being compensated at the rates set forth in **Appendix C**.

## II.   NATURE OF INVOLVEMENT

I have been asked to provide an objective opinion regarding the cause(s) of Randy Blake Patterson's failure to match into a residency program in 2013-2015, including but not limited to whether Dr. Patterson's lack of a USMLE Step 2 CS score prevented his licensure in sufficient time to match into a residency by July 1, 2013, thereby creating a gap in his professional training record which irreparably and permanently damaged his credentials to any and all residency training programs, or, stated a little differently, why Plaintiff failed to match into a residency.

## III.   INFORMATION REVIEWED

In the course of my work on this matter, I reviewed documents and materials produced by the parties in this case. I have also obtained and reviewed information from public and private sources. A listing of materials I have reviewed or relied upon is listed below. If additional relevant information becomes available, I will supplement this report as appropriate.

Defendant's Amended Responses to Plaintiff's Initial Discovery dated February 24, 2016
Defendant's Responsive Documents (NBME 00001-00068)

Plaintiff's Answers to Defendant's First Set of Interrogatories dated February 18, 2016
Plaintiff's Responses to Defendant's First Set of Requests for Production dated March 14, 2016
Plaintiff's Documents Responsive to Request for Production Nos. 1, 4, 6 and 14

Plaintiff's Answers to Defendant's Second Set of Interrogatories dated May 26, 2016
Plaintiff's Responses to Defendant's Second Set of Requests for Production dated May 26, 2016
Plaintiff's Documents Responsive to Request for Production Nos. 18, 19, 20, 21, and 24

Plaintiff's Academic Transcript produced by his counsel (dated December 9, 2015)

Documents provided by Loma Linda University
Documents provided by NRMP (NRMP/Patterson 00001-00112) and letter from Brent Gary
Documents provided by University of Arkansas Medical Sciences Ctr. (R.B. Patterson Subpoena
    1-48) and associated correspondence
Documents provided by University of Oklahoma and associated correspondence
    - OUHSC 001-692 and non-Bates labeled transcript
    - OU-Tulsa 001-031
Documents provided by the University of Virginia School of Medicine
Documents by Wake Forest Baptist Medical Center

Petition filed September 29, 2015 in District Court of Oklahoma County

Defendant's Answer to Plaintiff's Petition filed November 2, 2015 in the United States District Court for the Western District of Oklahoma
Letter from Steve Clark to Jack Dawson and Amy Alden regarding expert disclosures dated June 24, 2016
Plaintiff's United States Medical Licensing Examination (USMLE) applications
USMLE's Step 2 Clinical Skills Score Reporting Schedule
Information About Rank Order Lists and NRMP Policy - 2013 Main Residency Match
Application for preliminary residency information

## IV.   TIMELINE/ACADEMIC PERFORMANCE SUMMARY

Review of Pre Medical Course work

8/2005-7/2009      Oklahoma Christian, Edmond OK 3.74 GPA (No degree conferred)

5/2007-8/2007      Pepperdine (no degree), summer research only, no GPA listed; later confusion noted as some letter writers assume graduation from Pepperdine.

1/2009-4/2009      Cascade College, Portland Oregon, Biochemistry, Biology (no degree) 3.33 GPA

MCAT: 9 Biological Sciences, 10 Physical Sciences, 9 Verbal Reasoning
GRE: Verbal 81%, Quantitative 57%, Analytical 78%

Review of Medical School/USMLE Performance

Issue identified with embryology grade. Student had to take a make-up exam due to court subpoena from another state. No details of legal issue provided. University letters document error in answer key, grade reported as D later corrected to B once answer key corrected. Letters from student document impact on his biochemistry grade (took time away from study of other subjects in attempt to improve an already passing embryology grade). Student stated grade was responsible for his inability to get a summer job, and requested the University supply him with equivalent funding.

OB/GYN: D grade remediated to C
Pediatrics: C
Psychiatry: B
Medicine: A and B
Family Medicine: B
Neurology: B
Surgery: C

4th quarter of class in academic rank
6/28/11 USMLE STEP 1 score 190 (pass)
12/22/12 USMLE STEP 2 CK score 192 (fail)
10/10/13 USMLE STEP 2 CK score 217 (pass)
1/7/13 STEP 2 CS: fail --testing center issue documented
8/6/13 USMLE STEP 2 CS: pass

## IV.  OPINIONS

1. Based on the material reviewed, my experience with the NBME and knowledge of the application and match process, it is my opinion that Dr. Patterson would not have successfully matched in a general surgery residency program or in a preliminary position in the field of surgery at a U.S.-based surgical training program based on his pre-medical school performance, his first and second year performance in medical school, his clinical performance in medical school, his low USMLE Step 1 Score, his initial failure of USMLE Step 2 CK and his letters of endorsement. A passing USMLE Step 2 CS score would not have had an impact on his ability to match with a residency program.

2. Regardless of specialty, Dr. Patterson would not have matched with a residency program which became aware of the fact he does not possess an undergraduate degree, though he has represented otherwise. Dr. Patterson's resume or *curriculum vitae* is misleading, at best. It suggests he graduated *magna cum laude* from Pepperdine University. Though I do not yet have access to Dr. Patterson's deposition, I understand Dr. Patterson admits he never obtained an undergraduate degree from any institution.

3. The majority of Dr. Patterson's "recommendation" letters were, at best, actually letters of endorsement. The wording of letters of recommendation is well known among program directors. Significant letters extol candidates as being "the best" or "one of the best" and include key words such as awarding a student "highest recommendation" or "recommend highly". Adequate candidates are given a "recommendation" without adjectives. Weaker candidates may have a letter of support which frequently uses only that word as the verbiage for the intention of the letter writer. Other writers may simply choose to describe the candidate's medical school career in some detail and the words "in support of" or "recommendation" are conspicuously absent. These letters are the weakest form of endorsement. Though some of Dr. Patterson's letters appear to "recommend" him for further training, there appears to be some confusion regarding his past academic accomplishments in them leading me to question if the writers based their letters on complete and accurate information. The majority of the letters are, in fact, letters of "support" without a formal recommendation, and many of the letters actually alert residency program directors to Dr. Patterson's negative data points and undermine him as an applicant.

4. Randy Blake Patterson was unlikely to obtain a residency in any specialty during the 2013 Main Residency Match or Supplemental Offer and Acceptance Program (SOAP)

since he had a failing USMLE Step 2 CK score at that time, among other negative marks demonstrated during his didactic and clinical coursework. It is improbable that a residency program would rank any applicant who did not have a passing Step 2 CK score and who, like Dr. Patterson, had failed a core component of the curriculum. A resident without a passing Step 2 CK score is not considered by residency programs and are not ranked if they have not successfully passed the Step 2 CK. This is because if the applicant does not pass the exam and obtain a license, the candidate cannot function as a resident. In addition, the residency program has then lost its ability to fill the residency spot since it may not offer the position to anyone else.

5. Based on the interview notes available, Dr. Patterson did not interview well. The strongest wording on an evaluation of a candidate are the words "do not rank". This remark was made repeatedly on Dr. Patterson's evaluation with specific comments about his poor behavior and inappropriate demeanor. This indicated that he would not appear on that program's match list. Dr. Patterson's evaluations from these poor interviews show that he was not ranked based on his interview behavior and not because of the Step 2 CS.

6. Dr. Patterson was not proactive in trying to further his career, and in particular, positioning himself for success in the Main Residency Match. For example, Dr. Patterson did not follow the advice of his medical school advisors as to when he initially sat for Step 2 of the USMLE, he did not make a concerted effort to follow up with the NBME about re-scheduling his examination after the power outage (Patterson's phone records).

7. Based on the material reviewed, Dr. Patterson would not have been offered an interview for a General Surgery categorical or preliminary position at Saint Louis University. That opinion is based on a review of his pre medical school performance, his first and second year performance in medical school, his clinical performance in medical school, his low USMLE STEP 1 score, his initial failure of USMLE STEP 2 and his letters of recommendation. His failure to have a USMLE STEP 2 CS score is noted but would not have been a significant factor in the decision not to grant an interview to this candidate.

My work is ongoing in this matter. If additional relevant information is made available to me, I may supplement this report as appropriate.